Good morning, Counsel. Good morning, Your Honors. Mark Poe for the Plaintiffs. I intend to reserve about two minutes for rebuttal, and I'll keep my eye on the clock. All right. Thank you. Of course, the central issue on this appeal is whether a foreign company is subject to jurisdiction where it has entered into thousands of long-term contracts with foreign residents and then has used those contracts to overbill those residents at least tens of millions of dollars. Now, I think our substantive arguments are well laid out in the briefs. So, of course, my main goal this morning is to respond to any questions that Your Honors may have. The one point I suppose I would reiterate, however, is that even if we were to conclude that the district court was correct in holding that purposeful direction, is the exclusive means of evaluating jurisdiction on these charts? The district court didn't have the benefit of our en banc ruling in Briskin, which came out after the district court ruled. I think that's helpful to your case. Yes, precisely, Your Honor. And so I was going to move immediately to Briskin, which says the following, and I'm quoting, corporations whose websites exploit a national market cannot defeat jurisdiction in states where those websites generate substantial profits from local consumers. That's at 757. At 754, it's quoting Maverick's photo and reads, whereas here a website with national viewership and scope appeals to and profits from an audience in a particular state, the site's operators can be said to have expressly aimed at that state. So, if anything, the facts of this case present an even more compelling case for jurisdiction than in Briskin. The fact was Shopify planting a cookie on users' devices in apparently only a one-time event where that cookie was planted and where the forum residents had not, in fact, engaged in any transaction with the defendant. Here, of course, these are recurring transactions happening on a monthly basis over the course of years, and the transaction is directly with the defendant in the case. And, of course, the statements I just read from Briskin, they only reinforce what the Supreme Court has said about personal jurisdiction over the years. Just more recently in Ford Motor Company, and I'm quoting, it's at 364, when a corporation has continuously and deliberately exploited a state's market, it must reasonably anticipate being hailed into that state's courts to defend actions based on products causing injury there. You know, barring other questions from your honors, I suppose the last point that I would make is that when the numerous cases saying that a rigid dichotomy between express direction and purposeful direction and purposeful availment is perhaps not useful, that's particularly true on the facts of this case where these class members, their claims all arise from a contract, and then their individual claims, the wrongdoing happens to arise from sales transactions, which are essentially contracts. And then here, the cause of action is under the UCL, where the two prongs of the UCL that we're proceeding on are the unfair prong and the unlawful prong. So it's hard to say, like, how would we categorize whether this case arises under contract or arises under tort. And I think that just further emphasizes the point that a rigid dichotomy is unnecessary, which was... Let me ask you this, counsel. The district court did, in its analysis, cite a number of cases that have been overruled to some extent by Briskin. Should we send it back for reanalysis under Briskin, or are you asking this panel to reach the analysis in the first instance? I would ask the panel to reach the analysis immediately. As I recall, the district court's main basis for finding the absence of jurisdiction relied just on AMA multimedia, and its rule that the defendant's conduct had to specifically target the state. So that was just squarely reversed in Briskin. And so I think on these facts, there are no disputes or anything like that before the district court, and I think it would expedite things for this case. Well, reversed to the extent that some of our prior case law had a forum-specific focus. I think that that, as Briskin explained, is no longer viable. If you are asking the panel to reach the analysis in the first instance, would it be under the purposeful direction analysis that's usually applied to tort? Because you're saying there's some difficulty in figuring out whether it's tort or contract. I'm not sure that I agree with that, but what are you asking us to analyze it under? Purposely, for my own part, I am indifferent to the basis. I mean, I believe perhaps the simplest way is just to say the basis for finding an absence of jurisdiction by the district court was reversed by Briskin, and this therefore does constitute purposeful direction. However, I suppose I would encourage the court not to retreat from this point that has been made over and over, even again in footnote 10 of Briskin, about the fact that there is no need to concentrate only on either purposeful availment or purposeful direction. Well, I don't know that we've really completely upended the usual mode of analysis, right? There's, at times, substantial overlap between purposeful availment and purposeful direction. But it is usually, the preliminary question usually is to figure out whether it's an action that sounds in tort or contract and then focusing more on one mode of analysis or the other. I know you expressed no preference, but I'm just seeking your view as to what you think the analysis should, how you think the analysis should be done, given that you're asking the panel to do it in the first instance. You know, I suppose I would just repeat that we are fine having been categorized by the district court as a purposeful direction mode of analysis, and so just proceeding under the new case law in Briskin, I think, seems the most expeditious. With that, I'll reserve the balance of my time, Your Honors. Thank you. Okay. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. I'm Eric Shumsky and I represent Phoenix. Your Honors, plaintiffs do not cite a single case from this or any court that has found personal jurisdiction on facts, anything like these, and that is no different after Briskin. Let me talk about those sort of fundamental precepts for a moment and then work in the relevance of Briskin. And I want to start with a purposeful direction test. This Court has been absolutely clear in cases like Herbal Brands, which Briskin reaffirmed in Maverick's photo, that merely operating an interactive website is not enough. The out-of-state defendant must engage in conduct expressly aimed at the forum state. And again, Briskin reaffirmed that precise understanding of the test. It is the defendant that must create contacts with the forum state. But look at what that typically entails. In Doe v. Web Group, the defendant individually targeted a plaintiff known to be a forum resident. Or in Briskin itself, which is a much, much easier case than this one, the defendant, quote, knowingly installed tracking software onto unsuspecting Californians' phones so that it could later sell the data. That's Briskin at 759. In Ford Motor Company, the defendant advertised in the forum, had a network of car dealerships in the forum, even facilitated in-state car repair. Here we have nothing of the sort. All we have is plaintiffs reaching out to a website operated by a U.K.-based company to buy subscriptions. In other words, this case is the opposite of Burger King. There, the out-of-state defendant, the party that was contesting personal jurisdiction, reached out to Burger King in the forum state to engage in a business relationship. But here we have the obverse. It is the in-state party, plaintiffs, who reached out to a U.K. corporation to enter into a contract. That is presumably why plaintiffs didn't even press purposeful direction below and argued this case solely as a matter of purposeful availment. But purposeful availment is used to assess the defendant's contacts in the forum. This court made that clear in freestream aircraft, and that's typically in contract cases, which is the circumstance in which you most often have in-forum conduct. But here— We do say in Briskin that something more is required rather than just operating an online site. But explain to me why that something more is not present here, in terms of the interactivity of the website, the scope of the commercial reach, the fact that there are now 10,000 subscriptions per the allegations resulting in $400 million in annual revenues. Don't we look at those facts? So in terms of the interactivity of the website, there are no allegations about that. The only allegation is that Phoenix, a U.K.-based company, operates a website and that plaintiffs reach out from the forum to subscribe to and then watch content using that website. So there's nothing special about interactivity here and no allegations about that. Let me address the point about the number of alleged contracts. But it is interactive, right? There's no dispute that it's interactive. That's the design of the website is to be interactive. Absolutely, Your Honor. And Herbal Brands makes absolutely clear it is a holding of the case that merely operating an interactive website is not enough. That is not the something more. The something more is, by its terms, looking for something beyond the interactivity of the website or even the plaintiff reaching out to engage in a transaction. Let me turn to the part of Your Honor's question about the number of transactions and the alleged dollar value. And I want to answer that in three simple parts. First, again, to reiterate the legal test, operating an interactive website isn't enough and neither is plaintiffs in the forum reaching out to create a contract. That's Herbal Brands and Mavericks Photo and Davis and numerous other cases. So that's one. Two, that is all the lead plaintiff did here. Phoenix, a U.K. company, provides an interactive website and customers access it to view content. So there is not personal jurisdiction over the lead plaintiff.  Aren't there different levels of interactivity? And here we're talking about you can imagine a website that's minimally interactive. You click on it. It takes you to a different page. Maybe it provides you some information. But here, fundamentally, the service your client is delivering is being delivered to subscribers in the forum state. And so isn't this a maximally interactive website? Sure, you could describe it as interactive. But what's fundamentally happening is that your client is providing content to subscribers in the forum state. So if I could just try and spit out Part 3 of my answer to Judge Wynn, because I think this is absolutely critical given the way plaintiffs have argued this. And then if it's okay with Your Honor, I'll circle back to that. The third part, and this is the critical thing about the alleged volume of contracts and sales, if there is zero personal jurisdiction as to the named plaintiff, then the fact that there are 10,000 putative similarly situated plaintiffs doesn't create jurisdiction. 10,000 times zero is still zero. What they're looking for here, what they're trying to achieve, is a form of sort of low-grade general jurisdiction or general jurisdiction light. And, of course, there's no case that allows general jurisdiction in circumstances like this. So turning to Your Honor's question about interactivity, first of all, the complaint doesn't allege anything like that. Second, all that we have here, all that is alleged and all that is occurring, is a plaintiff in California watching content on the Internet from a U.K.-based company. And that's why I say Briskin is such an easier case than this. In Briskin, the allegation was that Shopify was, to use the analogy that this court used, entering into someone's house by deceptive means to take personal information from their files for personal gain, that the whole idea of the Briskin analysis was that Shopify was actually reaching out and getting into people's computers by downloading code onto it. Here we have absolutely nothing remotely comparable. They are watching videos on the web due to a subscription with a U.K.-based company. And so this is entirely different than Briskin and just telescoping out a little bit. There is no allegation about interactivity, about code, about actions that were taken, about the operation of the website that would make this anything other than just the mine run case of operating an interactive website without the something more that this court has always required. You haven't addressed the number of subscriptions and the annual revenues, because as we said in Briskin, an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choices and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain. So I think it's not just one particular fact. It's basically looking at the entire allegations and then deciding whether that satisfies expressly aiming test. But let me ask you the same question that I ask counsel. Do you want the panel to reach the analysis in the first instance or send it back for the district court to reanalyze it with the benefit of Briskin? So let me answer the two parts of Your Honor's question. As to the question about the volume of transaction and the dollars, that was what I was trying to get at in the third part of my three-part answer to Your Honor. If there is not express aiming as to the named plaintiff, the fact that there is no express aiming as to plaintiff number 2 and 3 and 4 and 10 and 1,000 and 10,000 doesn't change the analysis. They can't aggregate their way into personal jurisdiction that isn't otherwise there just by filing a putative class action. That would be exactly the sort of general jurisdiction light that judges of this court have warned against. Your Honor, candidly, we don't think, to answer the second part of Your Honor's question, we don't think Briskin probably changes a lot here. The core holding of Briskin was to say that the notion of differential targeting that had crept into cases like AMA is overruled. But Briskin, as I was saying earlier, really reaffirms all of the core principles about express aiming or, as Maverick's photo put it, conduct directly targeting the forum that drives the personal jurisdiction analysis. And here, for the reasons I was giving to Your Honor a moment ago, there is not one single allegation about any of that. The allegation here is that plaintiffs are the only ones to initiate relevant conduct. They reach out to a UK-based company to enter into subscriptions and watch videos on the Internet. And there is no notion of express aiming or direct targeting in any of that. Thank you, counsel. You're over time, but let me see if my colleagues have any additional questions. Thank you. Thank you. Just one point, Your Honor. My colleague for Phoenix contends that all that Phoenix did was operate an interactive website at the end. But, of course, that's not true. It created this website that allows for all of these contracts to be entered. And, more specifically here, the wrongful conduct concerns the subsequent billings. Here, when, as described in the complaint, a person enrolls with OnlyFans to create a username, then to subscribe to any creator they have to add a credit card, at which point then Phoenix knows that these are California residents. And then when they subscribe to their first creator, so far so good. There is no wrongful conduct. The sole wrongful conduct that we are alleging in the case is the subsequent re-billings. And in those subsequent monthly re-billings, that is done without any action of the class members whatsoever. That is solely Phoenix that is then billing those credit card accounts on a monthly basis. And that's all I have, Your Honor. Thank you very much, counsel, to both sides for your argument this morning. The matter is submitted and we'll issue our decision in due course.
judges: NGUYEN, VANDYKE, Huie